# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **ADRIENNE LEIGH SHIFFLETT,** | ) ) ) ) | Civil No.: 5:13cv00112 |
| *Plaintiff*, | ) ) |  |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| **CAROLYN W. COLVIN**, Acting Commissioner of the Social Security Administration | ) ) ) ) |  |
|  | ) | By: Hon. James G. Welsh |
| *Defendant* | ) ) | U. S. Magistrate Judge |

Adrienne Leigh Shifflett brings this civil action (docket #2) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her applications for a period of disability and disability insurance benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI respectively of the Social Security Act, as amended ("the Act"). 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq*. respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

Along with the Commissioner's Answer (docket #9), she filed a certified copy of the Administrative Record ("R.___") (Docket #11) which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. Each party seeks summary judgment (docket #13, #17), and each has filed a supporting memorandum of points and authorities (docket #14, #18). Oral argument was requested (see docket #14), and the views of the parties were heard telephonically on March 12, 2015. By standing order this case is before

1

the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. ADMINISTRATIVE AND PROCEDURAL HISTORY

The record shows that the plaintiff protectively filed her most recent claims for DIB and SSI on June 3, 2011 (R. 19, 35, 682-683). In her applications she alleges a disability onset date of January 28, 2010 [1] due to the combined effects of "hepatitis D, breathing problems and back pain" (R. 35, 133). Her claims were administratively denied both initially and on reconsideration; following an administrative hearing they were denied for a third time by written decision of an administrative law judge ("ALJ") dated January 13, 2012 (R. 19-29, 677-679, 684, 687-711). After unsuccessfully seeking Appeals Council review (R. 5-7, 11, 13), the unfavorable decision of the ALJ now stands as the Commissioner's final decision, and this action ensues. *See* 20 C.F.R. § 404.981.

## II. SUMMARY AND RECOMMENDATION

Based on a thorough review of the administrative record and for the reasons herein set forth, it is **RECOMMENDED** that the plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, an appropriate final judgment be entered **AFFIRMING** the Commissioner's decision denying the plaintiff's DIB and SSI applications, and this matter be **DISMISSED** from the court's active docket.

## III. STANDARD OF REVIEW

The court's review in this case is limited to determining whether the factual findings of the Commissioner are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.

---

[1] This alleged onset date is one day after the date of the ALJ's decision on the plaintiff's prior DIB application. Thus, the period of time relevant in the instant case is from January 28, 2010 (one day after the date of the prior ALJ decision) and September 13, 2012 (the date of the ALJ's more recent decision).

2

1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642). The court is "not at liberty to re-weigh the evidence … or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## IV. THE ADMINISTRATIVE RECORD

To facilitate a resolution of this case, a recitation of the procedural history of Ms. Shifflett's previous effort to obtain disability is in order. On February 29, 2008 she filed an application for DIB, alleging therein a disability onset date of October 22, 2007 (R. 36, 70). It was denied at both the Commissioner's initial and reconsideration levels (R. 35-36, 46-47, 59, 70); it was denied by written ALJ decision, dated January 27, 2010 (R. 36, 70-77), and her effort thereafter to obtain Appeals Council review was also unsuccessful (R. 36, 60-62).

In addition to being close in time to the period being currently adjudicated, the final decision of the ALJ on the plaintiff's prior application included a finding that the plaintiff retained the residual functional ability to perform a full range of light work, including her past relevant work as a packer (R. 74-77). Consistent with the Fourth Circuit's holding in *Albright v. Commissioner of SSA*, 174 F.3d 473, 477-478 (4th Cir. 1999) (interpreting *Lively v. Secretary of HHS*, 820 F.2d 1391, 1392 (4th Cir. 1986)) and Acquiescence Ruling ("AR") 00-1(4), the ALJ in the current case considered the earlier administrative findings as evidence and gave it "great weight," because of its closeness in time to the period being currently adjudicated; however, he

3

added certain postural limitations based on the opinion of the state agency medical reviewer (R. 27-28).

At issue in the instant case is the relatively brief decisionally relevant time period from January 28, 2010 (one day after the earlier ALJ decision) [2] to September 13, 2012 (the date of the ALJ decision herein at issue). As both ALJ decisions reflect, the plaintiff's insured status and consequent entitlement to DIB expired on December 31, 2012 (R. 20, 72).

### V. THE MEDICAL RECCORD

The plaintiff has a long history of hepatitis D, joint pain, and breathing problems (R. 72, 186-200, 219-220, 224-225, 232-234, 258-260, 277, 280-301, 314-315, 321-327, 332-372, 375-379-387, 441-444). When seen in the University of Virginia ("UVa") Digestive Health Clinic in June 2006, the plaintiff gave a medical history that included experiencing a generalized malaise (R. 258). Following various diagnostic studies, including a liver ultrasound, she was found to have "acute" cholestatic hepatitis, and she was started on a long-term prednisone treatment regime (R. 258-259, 277, 359, 369, 387). Although she experienced "recurrent flares" associated with "medical non-adherence," this pharmacologic treatment regime "improve[ed]" and "controlled" her autoimmune hepatitis "reasonably well" (R. 280, 289, 314, 321, 326).

During a follow-up physical examination at UVa in February 2008, Ms. Shifflett was also found to exhibit left and right hip discomfort, and a bone density study demonstrated significant decrease in bone mineral density (increased osteopenia) of the hip and lumbar spine (R. 277 - 279, 322).

---

[2] The plaintiff does not challenge the Commissioner's application of the preclusive effect of administrative *res judicata* during the previously adjudicated period. *See* 42 U.S.C. § 405(g)-(h); *Easley v. Finch*, 431 F.2d 1351, 1353 (4th Cir. 1970).

.

4

The plaintiff's earliest medical record from Mint Spring Clinic is dated March 2, 2006, and it records that she was seen at that time for a "check on [her] back" that was "no better" (R. 379). Over the next four and one-half years, she was subsequently seen by this primary care provider principally for recurring complaints of diverse aches and pains, including generalized weakness, achiness "from head to toe," left hand and wrist pain, aching from her "hips to [her] feet," leg pain, joint and muscle aches, and right side pain (R. 375-379, 440-444). In August 2008, her primary care provider, Lynn Moore, MD., clinically diagnosed her joint discomfort to be "osteoporosis (probably steroid induced)," and Fosamax (alendronate) was prescribed (R. 378, 441-442, 444).

During this period her diverse pain complaints were treated pharmacologically by her primary care provider with prescription Imuram (azathiopine) (R. 440-444). Through UVa her auto immune hepatic condition was pharmacologically treated and "reasonably well-controlled" with the use of a long-term prednisone regime (R. 277, 314, 359, 369). Her "breathing problems," were medically associated with her use of cigarettes, despite her expressed interest in quitting (R. 322, 375, 441); her polyarthralgias were medically associated with her chronic autoimmune hepatitis, and her generalized malaise was medially associated to the use of prednisone as a hepatitis treatment modality (*see* R. 341).

In early 2010, on referral by her primary care physician, Ms. Shifflett initiated treatment through the Pain Clinic at Augusta Health for her "complaints of polyarthralgias as well as a lesser complaint of lumbar radicular pain and back pain" (R. 480, 483-490). She reported close follow-up for her hepatic condition through UVa and no other serious medical problems, when she saw Darlinda Grice, MD., in the Pain Clinic on February 15, 2010 (R. 480-481). At the time, the plaintiff was taking no medication for pain, although she rated her pain level as 8/10 much of

the day (R. 480). Dr. Grice found the plaintiff to be alert, pleasant, oriented, in no acute distress, to exhibit no breathing problems, to have a normal heart rate, to have normal coordination and muscle strength, to have a full range of joint motion, to show no signs of any impairment secondary to medication, and to exhibit "no significant pain behaviors" (R. 480-482). On physical examination, Dr. Grice found the plaintiff to exhibit joint stiffness, "a bit of myofascial tenderness" in the shoulder, low back and hips, some aggravation of back pain on flexion and rotation, but no joint redness, swelling or fluid collection (*Id.*).

To address the plaintiff's pain complaints, Dr. Grice initially tried a low-dose oxycodone; however, both it and methadone caused the plaintiff significant nausea, and in April Dr. Grice substituted a Duragesic patch (R. 402-411, 471-475). This narcotic patch caused the plaintiff no side effects, and by the end of May 2010 Ms. Shifflett reported a twenty percent decrease in her level of pain (R. 400-401, 468-469). When she saw Dr. Grice at the end of August, she similarly reported that that she was "doing very well" with the patch and that it has brought her pain "down to a level where she [could] remain reasonably functional, independent with her activities of daily living, and doing some light duty housework" (R. 432-433, 465-467). Similarly, in November 2010 and again in February and May 2011 Ms. Shifflett reported that her medication regime remained "very helpful" in reducing her level of pain (R. 460-462, 464).

Pursuant to a referral by her primary care physician, the plaintiff was separately seen for consultive gastroenterology examination by Paul Guarino, MD., on December 15, 2010 at Augusta Health's Gastroenterology Clinic (R. 497-499, 513-521, 531-534). In addition to presenting for management of her autoimmune hepatitis, over the next couple of months she was also screened for cirrhosis and colorectal cancer (R. 496-512). The resulting laboratory and imaging studies suggested neither of these conditions to be medically significant at that time (R.

6

500-512, 517-519). The results of a liver biopsy and later clinic notes also indicate that the plaintiff's autoimmune hepatic condition was quiescent, had responded well to immunosupressive therapy, and continued to remain essentially unchanged [3] at least to the date of the ALJ's 2012 hearing decision (R. 493-494, 555-556, 558-559, 608-614, 626-627, 636-639).

Based on the plaintiff's complaint of persistent joint pain, in July 2011 Dr. Guarino referred the plaintiff to Augusta Health's Rheumatology Clinic "for evaluation of possible overlapping autoimmune disease" (R. 536-538). Dr. Matthew Hoganmiller's clinical examination revealed only a "mild decrease" in her active range of neck motion, a "stiff" gait, "tender points" in the trapezius and paraspinal region and "nothing specific" suggesting an overlapping disease diagnosis (R. 573-575). The results of related diagnostic studies disclosed only "mild" degenerative lumbosacral disc disease and osteopenia (R. 536-538, 540-547, 573-582). Flexeril (cyclobenzaprine) was prescribed by the rheumatologist at bedtime for the plaintiff's musculoskeletal pain complaints (R. 574-575).

When the plaintiff was seen in the pain clinic in August 2011, however, she complained of pain in "all joints" but reported that MS Contin (morphine) gave "good relief" (R. 570-572). Similarly, in October 2011 she complained of chronic pain at "multiple sites" but exhibited no obvious pain behaviors; she was cautioned about long-term opiate use; nevertheless, the prescription was renewed, and she was given an additional prescription for Neurontin (gabapentin) to treat restless leg syndrome (R. 565-569).

---

[3] Without the benefit of any previous biopsies for comparison, a liver biopsy on March 2, 2012 revealed fibrous expansion in the liver's portal area; it disclosed "very minimal" piecemeal liver cell loss, "only extremely minimal inflammation" of the key elements of the liver, and overall findings "consistent with quiescent treated autoimmune hepatitis demonstrating [a] good response" to therapy (R. 636-637, 638, 644-645).

7

Also in October, with complaints of diffuse joint pain, low back pain and depression the plaintiff saw Diane Landauer, MD., an Augusta Health primary care physician, for the first time (R. 614). Other than noting her subjective complaints of diffuse joint and low back pain and, on observation, her "somewhat" flat affect, [4] the results of Dr. Landauer's clinical examination were essentially normal (*Id.*).

On examination in December, the rheumatologist concluded Ms. Shifflett's persistent left hip pain was due to "multiple etiologies," including bursitis and fibromyalgia, among others, and referred her to the pain clinic for a steroid injection (R. 591-592, 597-599). In March 2012 she received a similar follow-up injection (R. 593-596).

Ms. Shifflett's other medical records dated in 2012 demonstrate no significant change in her condition. On February 20, 2012 she saw Dr. Landauer with a complaint of left knee pain and swelling (R. 626). In her treatment record Dr. Landauer noted the plaintiff's "stable" and "well-controlled" hepatic condition, the well-appearing results of her physical examination, and her suggestion of a liver biopsy and a left knee X-ray as preventive measures (R. 610-611, 626-628). X-ray of the plaintiff's left knee in February 2012 showed that a sclerotic lesion on her distal femur was only "slightly enlarged" (R. 605, 606). The results of a liver biopsy on Mach 2, 2012 [5] demonstrated the plaintiff's hepatic condition was quiescent and had responded well to immunosuppressive therapy (R. 608-609, 637-637, 638, 644-645). When the plaintiff saw Dr. Landauer in May, she presented with complaints of low back pain and leg weakness "with activity" and Dr. Landauer treated her with a corticosteroid injection (R. 604-605). When seen in June for a follow-up appointment, Ms. Shifflett reported that her low back pain was worse, "when … sleeping, walking, vacuuming or doing housework" (R. 655). She was advised to

---

[4] CelXA (citalopram) was prescribed for her depressive symptoms (*see* R. 612).

[5] See footnote 3.

continue her current conservative treatment regime that included medication and stretching exercises; she was advised to avoid lifting or other painful activity, and an MRI was ordered (R. 655-657). This subsequent lumbar magnetic resonance study demonstrated only a "very subtle well-contained disc herniation" and annular tear with "a very small non-extruded central HNP at L/4-5" (R. 658, 659).

## VI. OPINION EVIDENCE

In November 2011 the full administrative record was reviewed by a state agency medical consultant (R. 35-47). In doing so, Dr. Leslie Ellwood determined the plaintiff's hepatitis D and joint disease were both severe impairments (R. 41). She considered the relevant listings and concluded none was dispositive (R. 42). She made the appropriate two-step assessment of the plaintiff's subjective complaints and a credibility assessment (R. 42-43). After noting the fact that Ms. Shifflett's medical conditions were reasonably controlled with medication management, the unremarkable results of recent physical examinations and the fact that her daily activities were not severely limited, Dr. Ellwood determined the plaintiff's joint disease limited her ability to perform a number of exertional activities, but with those restrictions she retained the residual functional ability to perform a limited range of light and sedentary work (R. 43-45).

The ALJ gave this opinion evidence "significant weight in light of the credible evidence of record" (R. 28).

Addressing the plaintiff's autoimmune hepatitis, three weeks before the September 2012 administrative hearing, Dr. Guarino completed a questionnaire form in which he expressed the opinion that the plaintiff's hepatic condition met listing 5.05F, [6] and limited her functional ability

---

[6] *See e.g., Coleman v. Colvin*, 2015 U.S. Dist. LEXIS 21000,*52 (SDWVa. Feb. 23, 20150) (Issues "'reserved' [to the Commissioner include ... opinions on 'whether an individual's impairment(s) meets or is equivalent in severity to

9

to sit/stand/walk to a total of less than two hours during a normal workday, limited her to lifting less than ten pounds occasionally and would cause her to be absent from work more than four days each month (R. 649-653).

Also shortly before the administrative hearing, the plaintiff had Robert Burke,[7] a physician's assistant [8] at Augusta Health's Pain Management Clinic, complete a functional capacity questionnaire in which he opined that her "chronic polyarthralgia" and "chronic pain" in the low back and in all major joints, along with depression, were of such severity that they interfered with her ability to maintain attention and concentration and that she was incapable of even a low stress job [9] (R. 661-665).

The ALJ considered the substance of both Dr. Guarino's and Mr. Burke's opinions, and the ALJ's analysis applies equally to both opinions (R. 27). He rejected the conclusory disability opinions of both, because they invaded the province of the Commissioner. 20 C.F.R. §§ 404.1527(c), 416.927(c) and SSR 96-5p, and he found their other function-related opinions not

---

the requirements of any impairment(s) in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404"') ("the listings").

[7]  Mr. Burke identifies himself as "Robert Burke" and his occupation as "PA" (R.665) in the RFC assessment submitted to the ALJ's office under a cover letter from the office of Ms. Shifflett's attorney (R. 660). This transmittal letter misidentifies Mr. Burke as a "Dr." and does not give his first name. It appears from the ALJ's written decision that he simply repeated this error. An internet search at *http://www.augustahealth.com/physicians/bob-burke* confirms Mr. Burke's correct name, occupation, and employment as a physician assistant by Augusta Health Pain Management Clinic.

[8]  Under the agency's regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight. SSR 06-03p. Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. 20 C.F.R. §§ 404.1527(a). 416.913(a). The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants or therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d). *See Lotts v. Colvin*, 2014 U.S. Dist. LEXIS 106085,*6 (WDVa. Aug. 1, 2014).

[9]  *See e.g., Clay v. Colvin*, 2015 U.S. Dist. LEXIS 14982,*14 (MDNC. Feb. 9, 2015) (opining that the plaintiff is "'unemployable' is not a medical opinion, but rather an administrative finding reserved for the Commissioner"). *See also* 20 C.F.R. § 404.1527, ("a statement by your physician that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are 'disabled'").

10

to be supported by the longitudinal treatment record (R. 27). As support for this conclusion, the ALJ specifically pointed-out the limited physical findings on clinical examinations, the limited findings reported from diagnostic testing and the positive nature of Dr. Guarino's treatment notes attesting to the fact that the plaintiff was doing very well, showing her hepatic condition as well-controlled with immunosuppressive therapy, and recording that she had no neurologic or muscle strength deficits [10] (*Id*.).

## VI.  DISCUSSION

On appeal the plaintiff makes two assignments of error. First she contends the ALJ "disregarded" treating source medical opinions "without identifying any persuasive contradictory medical evidence (docket #14, pp 5-8). Second, she assigns error to the ALJ's finding that her statements concerning the intensity, persistence and limiting effects of her subjective symptoms were "not credible" (*Id*. at pp 8-10).

### A.

Although 20 C.F.R. §§ 404.1527, 416.927 dictate that the opinions of a treating physician are generally entitled to more weight than those of a non-treating physician, the regulations do not require the ALJ to accept such opinions in every situation *Jarrells v. Barnhart,* 103 Soc. Sec. Rep. Service 854,*9 (WDVa. 2005). In the end, the opinion of a treating physician must be weighed against the record as a whole, when determining eligibility for disability benefits. 20 C.F.R. § 404.1527(c)(2). Therefore, the finder of fact is entitled to reject such opinions, when not well-supported by medically acceptable clinical and laboratory diagnostic techniques, when inconsistent with the other substantial evidence in the record, or when it appears the treating physician is "leaning over backwards to support the application for disability benefits." *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789

---

[10]  The totality of the ALJ's analysis as to Dr. Guarino's opinion is equally applicable to Mr. Burke's opinion.

(7th Cir. 1982)); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). It is, therefore, ultimately the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

As support for her disability claim, Ms. Shifflett relies, at least in part, on the opinion of Dr. Guarino, her treating gastroenterologist, who opined that the plaintiff's autoimmune hepatitis "meets" listing 5.05F and limits her physical ability during a normal workday to less than 2 hours sitting/standing/walking, to lifting 10 lbs. or less, and would cause her to be absent from work more than 4 days each month (R. 649-653).

The ALJ, however, rejected Dr. Guarino's opinion on two manifestly cognizable grounds. First, the ALJ noted, that to the extent Dr. Guarino's opinion was a conclusory disability statement, it invaded the province of the Commissioner.[11] 20 C.F.R. §§ 404.1527(e) and 416.927(e) and SSR 96-5p. Second, as the ALJ explained, this treating source opinion was inconsistent with Ms. Shifflett's long history of a stable autoimmune hepatic condition that was well-controlled with immunosuppressive drug therapy, was inconsistent with the limited clinical and diagnostic findings in the record, and was inconsistent with the positive reports in Dr. Guarino's own treatment notes (R. 27) (*see* R. 627-627, 493-534, 555-562).

On review, it is evident that the ALJ appropriately weighed Dr. Guarino's opinion against the record as a whole. He provided an adequate rationale for discounting or rejecting this treating source opinion on the basis of persuasive contrary evidence. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). He provided an appropriate and more than minimal articulation of

---

[11] Medical source statements on issues reserved to the Commissioner are treated differently than other medical source opinions. SSR 96-5p. Both in 20 CFR § 404.1527 and § 416.927 and in SSR 96-5p, the agency explains that "some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability;" including … whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings…."

12

his basis for this assessment in order to permit a "meaningful appellate review. *See Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (an articulation of the basis for crediting or rejecting particular evidence is "absolutely essential for meaningful appellate review") (citing *Cotter v. Harris*, 642 F.2d. 700, 705 (3rd Cir. 1981)).

In short, the ALJ's rejection of Dr. Guarino's opinion is supported by substantial evidence. He adequately explained the reasons for the weight he gave to the opinion. His assessment is fully in accord with the applicable agency regulations. It is for him to resolve conflicts in the evidence, and it is not for this court to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ.

**B.**

Assuming *arguendo* that Mr. Burke's opinion is entitled to more weight than the opinion of a non-treating physician, as with Dr. Guarino's opinion, Mr. Burke's must be weighed against the record as a whole, when the ALJ is determining Ms. Shifflett's eligibility for disability benefits. In his functional assessment responses (R. 661-665), he opined that Ms. Shifflett was physically incapable of even low stress work, and during a normal workday she could sit/stand no longer than 20 minutes at one time, was limited to standing/walking a total of less than 2 hours, to sitting at least 6 hours, to lifting less than 10 lbs. occasionally, and to being unable to work more than 4 days each month (*Id.*).

For the same reasons outlined above, the ALJ rejected Mr. Burke's opinion (R. 27). His statement that the plaintiff is "incapable of even low stress jobs" is not a medical issue regarding the nature and severity of the plaintiff's impairment(s) but an administrative finding that is dispositive of her claim and, thus, it too invades issues reserved to the Commissioner. SSR 96-5p. Similarly, Mr. Burke's opinion, like that of Dr. Guarino, is inconsistent with the record as a

13

whole. It is not based on any significant clinical or diagnostic testing, and the medical record also contains significant contrary evidence. Moreover, on its face this assessment appears to be based in large measure, if not entirely, on the Ms. Shifflett's self-reports of pain and related limitations rather than any objective clinical findings. Thus, the ALJ may also appropriately reject this opinion if he finds, as the record suggests, that this treating source is "leaning over backwards to support the application for disability benefits." *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

## C.

In connection with his residual functional capacity determination, the ALJ assessed the credibility of the plaintiff's hearing testimony regarding the debilitating nature of her joint and back pain and other subjective symptoms (*see* R. 694-710), and he compared that testimony with pertinent parts of her medical treatment record, diagnostic testing results and the scope of her activities (R. 26-27). *Inter alia*, he specifically noted that she had experienced no loss of motor strength in her upper or lower extremities, no significant gait abnormalities, no sensory deficits, and no significant range of motion deficits "on repeated physical examinations" during the decisionally relevant period. (R. 27). He specifically took note of the fact that the plaintiff's rheumatologist and her gastroenterologist had recorded her hepatic cirrhotic conditions to be stable with "no evidence of any extrahepatic manifestations," and he also took note of the fact that multiple diagnostic studies had demonstrated only a very small non-extruded herniation with an attendant annular tear at L4-5 and quiescent hepatitis "demonstrating a good response to immunosupressive therapy" (*Id.*). In addition, he mentioned the fact that the plaintiff's range of daily activities suggested an additional inconsistency with the degree of limitations alleged by the plaintiff (*Id.*).

14

The agency's regulations set out a two-step process for evaluating a claimant's allegation that she is disabled by symptoms, such as pain, caused by a medically determinable impairment. *Fisher v. Barnhart*, 181 F. App'x 359, 363 (4th Cir. 2006) (citing 20 C.F.R. §§ 404.1529, 416.929). Therefore, the ALJ must first determine whether objective medical evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to cause the kind and degree of pain alleged. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96-7p; *see also Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996). If the plaintiff meets this threshold, as she did in the instant case, the ALJ must then evaluate the intensity and persistence of Ms. Shifflett's pain to determine the extent to which it affects her ability to work. SSR 96-7p; *see also Craig*, 76 F.3d at 595.

In accordance with this second step evaluation, the ALJ considered "all of the available evidence" in the record, including Ms. Shifflett's statements, her treatment history, medical-source statements, and the objective medical evidence, 20 C.F.R. §§ 404.1529(c), 416.929(c); he gave specific reasons "grounded in the evidence" for the weight he assigned to a her statements, SSR 96-7p, and also in accord with his decisional obligation the ALJ determined "the degree to which [Ms. Shifflett's] statements [could] be … accepted as true." (*Id*.). In this instance he found the plaintiff's statements were "not credible to the extent they [were] inconsistent" with her ability to perform her past work as a packer (R. 26-28).

"When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting NLRB v. *Air Products & Chemicals, Inc*., 717 F.2d 141, 145 (4th Cir. 1983). *Exceptional circumstances* include instances where "a credibility determination is unreasonable, contradicts other findings of fact, or is 'based on an inadequate reason or no

15

reason at all.'" *Eldeco* 132 F.3d at 1011(quoting *NLRB v. McCullough Envtl. Servs.*, 5 F.3d 923, 928 (5th Cir. 1993 (citation omitted). "Only in such a situation is a reviewing court 'free to review the record and independently reach [its] own conclusions.'" *Id.* (quoting *McCullough*, 5 F.3d at 928). Otherwise, careful fact-finding, such as that undertaken by the ALJ in the instant case, is entitled to deference, and Ms. Shifflett's claim of a credibility finding error is without merit.

## D.

The recommendation that the Commissioner's final decision be affirmed should not be read to suggest that Ms. Shifflett does not have very real and long-standing limitations and health-related issues. The ALJ's non-disability decision, however, is supported by substantial evidence; it is free of legal error, and it is, therefore, conclusive.

## VII. PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions, and recommendations:

1. The factual findings of the Commissioner are supported by substantial evidence;

2. The factual findings of the Commissioner were reached through application of the correct legal standards;

3. Through the date of the ALJ decision the plaintiff's severe impairments include: autoimmune hepatitis D, degenerative disc disease and cirrhosis;

4. The plaintiff meets the insured status requirements through December 31, 2012:

5. The plaintiff has not engaged in substantial gainful activity during the decisionally relevant period;

6. The ALJ's rejection of the opinion of Dr. Guarino is supported by substantial evidence;

7. The ALJ's rejection of the opinion of Mr. Burke is supported by substantial evidence;

8. Including, but not limited to listing 5.05F, the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1;

9. The state agency medical consultant's review of the plaintiff's claim and physical residual functioning capacity assessment are based on substantial evidence;

10. The ALJ properly assessed the plaintiff's credibility regarding the nature and extent of her functional limitations pursuant to the two-step process required by 20 C.F.R. §§ 404.1529, 416.929, and it is supported by substantial evidence;

11. Consistent with *Albright v. Commissioner of SSA*, 174 F.3d 473, 477-478 (4th Cir. 1999) and AR 00-1(4), the ALJ considered the earlier administrative findings as evidence and appropriately gave them great weight;

12. The Commissioner's residual functional capacity determination is supported by substantial evidence;

13. Through the date of the ALJ's decision, the plaintiff had the residual functional capacity to perform her past relevant work as a packer;

14. There is no reason to believe that a remand of this case might lead to a different result, *See generally Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.");

15. The plaintiff has not met her burden of proving a disabling condition on or before the date of the ALJ's decision; and

16. The final decision of the Commissioner should be affirmed.

## VIII. TRANSMITTAL OF THE RECORD

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## IX. NOTICE TO THE PARTIES

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

**DATED**: This 18th day of March 2015.

*s/ James G. Welsh*
United States Magistrate Judge